AUSAs: Kathryn Wheelock / Alexandra Messiter

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **25 MAG 2803** |
| v. | **FURTHER AMENDED COMPLAINT** |
| FAISIL McCANTS, | Violations of 18 U.S.C. §§ 1951, 924(c), and 2 |
| Defendant. | COUNTY OF OFFENSE: NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

NICHOLAS GEROULAKIS, being duly sworn, deposes and says that he is a Task Force Officer with Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
### (Hobbs Act Robbery)

1.      On or about August 27, 2025, in the Southern District of New York and elsewhere, FAISIL McCANTS, the defendant, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, McCANTS robbed a drug dealer of, among other things, marijuana, in the vicinity of East 109th Street and Madison Avenue, New York, New York.

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT TWO
### (Use, Carrying, and Possession of a Machinegun)

2.      On or about August 27, 2025, in the Southern District of New York and elsewhere, FAISIL McCANTS, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count One of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm—specifically, a machinegun capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, and aided and abetted the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii) and (B)(ii) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

1.      I am a Task Force Officer with HSI and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2.      Based on my involvement in this investigation, my review of surveillance video collected from multiple locations in the vicinity of East 110th Street and Madison Avenue in New York, New York, and my conversations with members of the New York City Police Department ("NYPD"), I have learned the following:

    a.  On or about August 27, 2025, at approximately 12:22 p.m., a male sleeping on a lawn chair ("Individual-1") at the northwest corner of East 109th Street and Madison Avenue, in front of a deli (the "Deli"), was approached by three male individuals, each of whom was wearing a face mask covering his mouth.

    b.  As set forth below, the tallest of the individuals has since been identified as FAISIL McCANTS, the defendant.  *See* paragraph 5.  The surveillance video depicts McCANTS wearing black sweatpants, a black zip-up sweatshirt with a silver zipper and white or silver caps on the ends of the drawstrings, black and white sneakers, and a blue surgical face mask.

    c.  McCANTS and two other people ("CC-1" and "CC-2," and together with McCANTS, the "Robbers") approached Individual-1.  McCANTS was carrying a cellphone in his hand as the Robbers approached Individual-1.  The Robbers initially walked past Individual-1 and went around the corner of the Deli for less than a minute.  While around the corner, McCANTS, CC-1, and CC-2 engaged in conversation, and McCANTS reached into his right sweatshirt pocket, gripped an item inside, and started walking back towards the Deli, with CC-2 standing to McCANTS' right.[1]

    d.  The Robbers then came around the corner again, returning to Individual-1.  The Robbers woke up Individual-1 and McCANTS bent down towards Individual-1, with his hand again inside his right sweatshirt pocket.  After a brief conversation, the Robbers got into a physical altercation with Individual-1, during which Individual-1 observed McCANTS with a firearm.

    e.  CC-2 and McCANTS each grabbed a backpack from Individual-1 and fled north, with CC-1, on Madison Avenue before turning east on East 110th Street.

---

[1] McCANTS later pulled out the object—which was the Firearm, defined below—from his right sweatshirt pocket before shooting it.

f.   Individual-1, like the Robbers, also ran northbound on Madison Avenue, then turned onto East 110th Street between Madison Avenue and Park Avenue, following the Robbers.

g.   Approximately two minutes after the start of the robbery and while continuing to run away from Individual-1, at approximately 12:24 p.m., McCANTS pulled a black firearm (the "Firearm") from his right sweatshirt pocket, pointed it west on East 110th Street, and began firing back in the general direction of Individual-1. Surveillance video from at least two locations depicts numerous muzzle flashes in continuous succession coming from McCANTS' Firearm, as well as multiple shell casings flying from the Firearm onto the sidewalk.

h.   A woman standing with a walker on the northwest corner of East 110th Street and Madison Avenue (the "Victim")—that is, in the direction that McCANTS shot the Firearm—is depicted on surveillance video falling to the ground at approximately 12:24 p.m. after being struck by gunfire

3.      Based on my review of a Mirandized interview of Individual-1 on or about August 28, 2025, my conversations with other law enforcement officers, and my involvement in this investigation, I am aware that Individual-1 stated, in sum and substance, that on or about August 27, 2025, three men—that is, the Robbers—approached him and asked if he sold "weed." The Robbers then told Individual-1 that they wanted "everything" and stole Individual-1's backpack, which contained marijuana. In addition, Individual-1 identified himself and the Robbers in still images from surveillance video of the Deli.

4.      Based on my conversations with other law enforcement officers, including members of the NYPD, and my review of NYPD records and reports, I am aware of the following:

a.   At approximately 12:30 p.m. on or about August 27, 2025, law enforcement responded to the northwest corner of East 110th Street and Madison Avenue where the Victim, who was a sixty-nine-year-old woman, had been struck by gunfire.

b.   The Victim was transported to the hospital, where she was pronounced dead.

c.   Fifteen shell casings were recovered on, or next to, the sidewalk where FAISIL McCANTS, the defendant, was depicted in surveillance video shooting the Firearm in the direction of Individual-1 and the Victim.

5.      Based on the following, I believe that the individual depicted in the surveillance video discharging the Firearm is FAISIL McCANTS, the defendant:

a.   I have reviewed a known photograph of McCANTS from a law enforcement database. Based on my review of that photograph compared to surveillance video depicting the individual discharging the Firearm, I believe that that individual is McCANTS.[2]

---

[2] The surveillance video shows McCANTS wearing a blue surgical mask during the robbery and shooting. However, even with the surgical mask, the top half of McCANTS' face is visible in the

3

b. On or about August 28, 2025 at approximately 11:00 p.m., a photograph of an individual covering his face with his hands was posted to an Instagram account with the handle "bigthreat64_[.]" The photograph—taken at night—depicts a person standing outside of what appears to be a New York City Housing Authority ("NYCHA") building, wearing a black zip-up hoodie with silver or white caps on the end of the drawstrings and a silver zipper. The shooter in the video surveillance described above is wearing what appears to be the same hoodie—with a silver zipper and silver or white caps on the end of the drawstrings.

c. Further, based on my training and experience, and my conversations with a member of the NYPD assigned to the 23rd Precinct (which covers the area in which the NYCHA Johnson Houses are located), I believe that the photograph described in paragraph 5(b), was taken outside of the Johnson Houses, located on East 112th Street in New York, New York, that is, within two blocks of the scene of the robbery and shooting described herein. Based on my review of law enforcement databases and records from the New York City Human Resources Administration, which administers NYCHA, I have learned that McCANTS is registered as a resident of the Johnson Houses at 1565 Park Avenue, New York, New York (the "Park Avenue Building").

d. I have communicated with two members of the NYPD—a detective and a police officer assigned to the 23rd Precinct (the "NYPD Officers")—who have personally interacted with McCANTS, the defendant, on multiple occasions since in or about 2023. The NYPD Officers have reviewed surveillance video showing the individual discharging the Firearm, as described above, and identified that individual as McCANTS.

6. I have reviewed surveillance video from NYCHA showing an entrance to the Park Avenue Building, as well as surveillance of the exterior and interior of 1830 Lexington Avenue ("Lexington Building"), which I know, based on my training and experience, is also part of the Johnson Houses. Based on my review of that surveillance video, I am aware of the following:

a. At approximately 12:11 p.m. on or about August 27, 2025 (that is, the day of the robbery and shooting), CC-1 and CC-2 stood in front of the Park Avenue entrance to the Park Avenue Building, appearing to be waiting for someone.

b. After CC-1 and CC-2 arrived and waited in front of the Park Avenue Building, McCANTS—who resides at the Park Avenue Building, as detailed above, and who is captured wearing the same clothing as during the robbery—exited the Park Avenue Building and the three men walked south towards 111th Street.

c. At approximately 12:27 p.m.—after the robbery and shooting—CC-2, wearing a backpack, and McCANTS were captured walking into the Lexington Building.

_____

surveillance video, and at various points, the surgical mask fell below McCANTS' nose, revealing more than half of his face, thereby revealing readily identifiable facial features.

4

Less than a minute later, CC-1—wearing the same clothing as in the surveillance video of the robbery and subsequent flight—is captured walking on the same path into the Lexington Building.

7.    I have reviewed an audio recording from ShotSpotter,[3] which captured a recording of fifteen gunshots in the vicinity of 109th Street and Park Avenue on or about August 27, 2025 at approximately 12:24 p.m.

8.    I have spoken with an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF Agent") who is trained and has experience in identifying firearms, including machineguns, and who has reviewed surveillance video of FAISIL McCANTS, the defendant, shooting the firearm described in paragraph 2(e), and who has also reviewed an audio recording obtained from ShotSpotter, described in paragraph 7. From that analysis, the ATF Agent has determined that the Firearm is a machinegun based on, among other things, (i) the number of rounds discharged in quick succession (15—the same number of shell casings that were found on the sidewalk where McCANTS fired the gun), (ii) the rounds were discharged at a consistent interval with what appears to be the same amount of time passing between each of the rounds, and (iii) the sustained nature of the muzzle flash, indicating a single trigger pull.

WHEREFORE, I respectfully request that FAISIL McCANTS, the defendant, be imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
NICHOLAS GEROULAKIS
TFO, Homeland Security Investigations

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this
4th day of September, 2025

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

---

[3] I know based on my training and experience that ShotSpotter is a system which is designed to capture the sound of gunfire through a network of acoustic sensors in various geographic locations deployed in municipalities including New York City. The acoustic sensors deployed as part of the ShotSpotter system capture sounds that are then evaluated by a human reviewer for identification as gunfire. When gunfire is identified, a notification with location information and a recording of the audio is transmitted to the NYPD for further investigation.