UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA      :

                 :

        - v -            :

                 :           **25 CR 417 (JSR)**

**FAISIL McCANTS,**         :

      Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## SENTENCING MEMORANDUM
## ON BEHALF OF FAISIL McCANTS

TAMARA GIWA, ESQ.
Executive Director
Federal Defenders of New York
Attorney for Defendant
**Faisil McCants**
52 Duane Street, 10th Floor
New York, NY 10007
Tel.: (212) 417-8728
Amy Gallicchio, Esq.
Michael Arthus, Esq.
Of Counsel

To:    JAY CLAYTON, ESQ.
       United States Attorney
       Southern District of New York
       26 Federal Plaza, 37th Floor
       New York, NY 10278

Attn: AUSAs Kathryn Wheelock, Alexandra Messiter, and Brandon Harper

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

April 28, 2026

**BY ECF AND EMAIL**
Honorable Jed S. Rakoff
Senior United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

>      Re:    **United States v. Faisil McCants**
>             **25 CR 417 (JSR)**

Dear Judge Rakoff:

Faisil McCants was only 18 years old when, in a moment of reckless impulse, he pulled the trigger of an automatic firearm. His actions were a catastrophic failure of judgment, and an innocent bystander lost her life as a result. Nothing in this memorandum will minimize the tragic and irreversible consequences of Mr. McCants' conduct or the unbearable grief of the victim's loved ones.  But Mr. McCants' path to that moment was paved long before he had the capacity to make meaningful choices.  He endured a childhood defined by chronic and severe abuse, neglect, and abandonment — experiences that, as neuroscience research has shown, "exacerbated typical age-related neurological vulnerabilities." See Exhibit A at 11. What Mr. McCants did was impulsive.  The death of an innocent woman was not a goal or a plan but a tragic and unintended consequence.

Mr. McCants is still just a teenager. Social science research shows that young people are prone to the type of poor decision-making Mr. McCants exhibited. And it also shows that young people like Mr. McCants are capable of dramatic change. Mr. McCants is committed to getting much needed help. He faces a mandatory minimum sentence that will keep him incarcerated until he is middle aged. A

The Honorable Jed S. Rakoff                                April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)


sentence beyond that would be greater than necessary. At the time of sentencing, we will urge this Court to impose a sentence of no more than 360 months, followed by a term of supervised release. As detailed herein, the mitigating circumstances in this case are significant and demonstrate that a sentence at the substantial mandatory minimum is consistent with the statutory purposes of sentencing under 18 U.S.C. § 3553(a).


## A SENTENCE OF 360 MONTHS
## SERVES THE GOALS OF 18 U.S.C. § 3553(a)


### A. Mr. McCants's personal history and characteristics support a sentence of no greater than 360 months.

Attached as Exhibit A is the report of Erik Mercer, L.C.S.W., a mitigation specialist and psychotherapist.  Mr. Mercer details Mr. McCants' developmental and psychosocial history and explains how his childhood experiences shaped his neurological development — and ultimately his conduct in this case.

Mr. McCants' earliest years were marked by extreme neglect and abandonment. Basic protection, support, guidance, and love were virtually absent from his life. Exhibit A at 2.  ACS records document a childhood marred by neglect, malnutrition, domestic violence, inadequate housing, and insufficient clothing. Id. No family member proved able — or willing — to care for him. Id at 3. Mr. McCants was permanently removed from his mother's custody at age three, after a police officer found him wandering the street alone on a freezing January night, wearing only a sweater, jeans, and sneakers. Id.  When authorities brought Mr. McCants home, his infant brother was found alone in the apartment with the door open. ACS records described the apartment as filthy and infested with flies.  Id. After a series of foster home placements where Mr. McCants was physically and emotionally abused, at five years old he was permanently placed with Richelle McCants, who later legally adopted him. Id. at 3-4.

2

The Honorable Jed S. Rakoff                                    April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)

Life in Richelle's home was no better. The isolation, abuse, and neglect continued. Id. at 4. Nor did his surroundings offer any relief — the East Harlem neighborhood where he grew up was marked by violent crime and pervasive gang activity. Id. at 10.  As Mr. Mercer describes in his report, "As Faisil moved into adolescence, his trajectory was predictable. Surrounded by a cascade of risk factors with no protective factors to protect him from their toxic impact, Faisil succumbed to the overwhelmingly negative influences around him." Id. at 6. "Faisil learned early that young people without gang affiliation in his neighborhood faced grave danger. Without the security of gang membership, Faisil was exposed to threats from every corner of his community. Without family or community protection, Faisil recalls that affiliating with a gang felt like the only way to find safety." Id. Tragically, Mr. McCants was drawn into gang involvement at a young age. At just 16, he was adjudicated a youthful offender and incarcerated after pleading guilty to attempted murder, stemming from an incident where he discharged a firearm in the direction of another individual.[1]

It would be easy to characterize Mr. McCants simply as someone who has made a number of bad choices. But Mr. McCants' conduct and behavior are unquestionably the result of his youth and his exposure to almost unimaginable amounts of trauma. Mr. Mercer's report discusses the many studies that link childhood exposure to trauma to poor future outcomes in health and wellbeing.  In particular, Mr. Mercer examines the CDC-Kaiser ACE study that found links between poor outcomes and the presence of ten factors known as Adverse Childhood Events (ACE). Id. at 6.  Mr. Mercer notes, "Faisil experienced *at least nine* of the ten ACE risk factors over the course of his childhood and adolescence. This amount of traumatic stress on a child is so extreme that the original data set of over 17,000

---

[1] The pre-sentence report mistakenly states that Mr. McCants shot someone in the stomach during that incident. PSR ¶ 30. The complaint and indictment in that case contain no such allegation.

The Honorable Jed S. Rakoff                                    April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)

adults upon which the study is based does not even include individuals with this number of risk factors." Id.  He adds,

> It is well documented in scientific literature that prolonged activation of stress hormones disrupts brain development. Disruptions to the areas of the brain that govern emotional regulation and executive functioning are common among children who live with a chronic fear of grievous harm (Debellis et al, 1999, Teicher et al., 2002, Shonkoff et al. 2012). Faisil's developmental trajectory is a textbook example of what happens to children who live under constant threat without a caregiving system to buffer them. Faisil's entire childhood was defined by relentless abuse and neglect that had a devastating impact on his development into young adulthood.

Id. at 7.  Moreover, "Deficits that result from childhood physical and emotional abuse are exacerbated by neglect. Neglect has been found to be one of the most toxic adverse childhood events, surpassing even severe physical abuse in its correlation to negative outcomes." Id. at 9.  "Chronic neglect can alter the development of biological stress response systems in a way that severely compromise a child's ability to cope with adversity (Pollack, 2010)." Id.  Mr. McCants' conduct in this case should be understood in the context of these impairments.

Mr. McCants' conduct was further informed by age-related neurological vulnerabilities, which compounded the impact of ACE factors and trauma history. It is widely understood by scientists and legal experts that the adolescent brain, especially the part responsible for decision-making, impulse control and understanding consequences, doesn't fully mature until well into a person's twenties. This diminished capacity for mature judgment is exactly why the law recognizes that juveniles are less culpable for their actions than adults, and is precisely why our legal system treats juvenile offenders differently.

The Honorable Jed S. Rakoff                                   April 28, 2026
<u>United States v. Faisil McCants</u>
25 CR 417 (JSR)

### B. The nature and circumstances of the offense and Mr. McCants' age militate in favor of a sentence of 360 months.

In <u>United States v. Ramsay</u>, 538 F.Supp.3d 407 (S.D.N.Y. 2021), this Court examined the attributes of adolescence that matter in sentencing, identifying four key considerations. First, courts should be cognizant of the adolescent "maturity gap," "particularly when the offense occurred quickly in a high-paced, emotional environment." <u>Id</u>. at 420. Second, courts should account for "adolescents' temporarily enhanced susceptibility to peer influence," especially "when the criminal act took place in the presence of peers." <u>Id</u>. at 421-422. Third, judges should consider the likelihood that "youthful character deficiencies will be reformed." <u>Id</u>. at 422. And fourth, the Court observed that "relative to adults, adolescents' crimes are less a product of their choices and more a product of their environment." <u>Id</u>. All of these considerations are relevant to Mr. McCants and the circumstances surrounding his conduct.

There is no dispute that Mr. McCants engaged in extremely dangerous conduct. He participated in the armed robbery of a drug dealer in broad daylight. As he and his co-conspirators fled, Mr. McCants discharged his firearm in the direction of the robbery target, who was in pursuit but approximately half a block away. The automatic weapon rapidly discharged approximately 15 rounds. Tragically, one of those rounds struck and killed a woman standing a block away.

There can be no minimizing the awful result of Mr. McCants' actions. But it is important to emphasize that Mr. McCants did not intend to take anyone's life — he did not fire upon the robbery target during the robbery itself or during the physical struggle with the robbery target that preceded the flight. He committed the offense quickly, in a high-paced emotional environment, while fleeing and in the company of peers. Discharging a firearm on a public sidewalk — though devastating in its consequences — was the impulsive, reckless act of an 18-year-old who had experienced significant trauma and instability from a young age and who

5

The Honorable Jed S. Rakoff                                April 28, 2026
<u>United States v. Faisil McCants</u>
25 CR 417 (JSR)

never received the guidance or support that might have led him to make a different choice in that moment. As this Court noted in <u>Ramsay</u>, those are all important considerations militating in favor of mercy for Mr. McCants.

The lack of support continues to this day, even in Mr. McCants' moment of greatest need.  His adoptive family has been nearly absent from his life, and that absence is painfully visible from the fact that not a single person visited him during his detention and not one letter of support has been submitted on his behalf. No one has appeared in court for him, and we do not expect anyone to be present at sentencing.  This sad reality is a testament to how thoroughly Mr. McCants was failed long before the events that brought him before this Court.

Mr. McCants accepted responsibility for his conduct within three months of his arrest, fully aware that doing so meant facing a mandatory minimum sentence of 30 years — a sentence longer than his entire life thus far. He has expressed his sincere remorse and has apologized for the harm he caused. PSR ¶ 26.  The consequences of his actions will result in his confinement in federal prison for the next three decades. Such a severe sentence is sufficient under the circumstances of this case, given the entire context of Mr. McCants' unimaginably troubled life.

### C. A sentence of 360 months will serve the goals of sentencing.

In light of the mitigating factors discussed above, a sentence of 30 years in prison is a severe punishment and one that more than serves this goal of sentencing.  This is especially true for an adolescent, the type of person who, because of their "immaturity, their susceptibility to peer influence, and their dependence mean 'their irresponsible conduct is not as morally reprehensible as that of an adult.'" <u>Id</u>. at 423 (quoting <u>Roper v. Simmons</u>, 543 U.S. 551, 570 (2005)). Thirty years is, at the same time, an appropriate punishment for the taking of an innocent life.

6

The Honorable Jed S. Rakoff                                    April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)


Thirty years is more than sufficient to satisfy the goal of deterrence. As the Court recognized in Ramsay, "Youths' immaturity – particularly in the context of 'hot cognition' decisions made in the presence of peers – also lessens the value of deterrence because adolescents' 'immaturity, recklessness, and impetuosity make them less likely to consider potential punishment.'" Id. at 423 (quoting Miller v. Alabama, 567 U.S. 460, 472 (2012)).  Because adolescents are, by their very nature, less capable of weighing consequences before acting, the threat of a lengthy sentence has diminished deterrent value. A 30-year sentence meaningfully addresses this goal without imposing a punishment disproportionate to Mr. McCants' culpability.

Thirty years is also severely incapacitating. Yet as this Court recognized in Ramsay, incapacitation "applies with less force to younger offenders because, as noted, adolescent crime is a poor predictor of future criminal behavior, both because adolescents' characters are still developing and because adolescent crime is attributable, in part, to temporary inadequacies of the adolescent brain." Id. Research consistently shows that criminal behavior drops sharply as individuals move through their twenties and into adulthood.  The same impulsivity and neurological immaturity that contributed to this tragedy are also the very factors most likely to diminish with age.  A 30-year sentence more than satisfies the incapacitation interest given this reality.

Finally, thirty years is a sentence that preserves the possibility of redemption and rehabilitation. Mr. McCants will spend the entirety of his youth and much of his young adult life incarcerated. He will emerge from prison a middle-aged man, having had decades to reflect, grow, and reform. The Supreme Court has recognized that youth "is not just a mitigating factor — it is perhaps the most significant" one, because children are constitutionally different from adults in their capacity for change. Miller, 567 U.S. at 471.  As Mr. Mercer's report describes, "Faisil has demonstrated an aptitude for success and growth in custody. Juvenile records

The Honorable Jed S. Rakoff                                      April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)

illustrate that Faisil responds positively to structure. Faisil has articulated his intention to take advantage of opportunities for self-improvement in prison and his medical, academic, institutional and mental health records suggest that with support and treatment, he has strong capacity for positive change." Exhibit A at 13.

A 30-year sentence honors both the gravity of the offense and the possibility that Mr. McCants, like many young offenders, is capable of becoming someone different.

### D. The need to avoid unwanted sentencing disparities supports a sentence no greater than 360 months.

In determining the appropriate sentence, 18 U.S.C. § 3553(a)(6), directs the court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." The cases below provide examples of sentences imposed in matters where, like Mr. McCants, the defendants' conduct resulted in the death of another person — but where, unlike here, that death was intentional and premeditated. Significantly, in only one of these cases did the defendant receive a sentence exceeding 360 months.

In Ramsay, for the reasons already discussed *supra*, the Court reduced a sentence of life in prison – a sentence that was mandatory at the time of sentencing - to 360 months for a murder committed by Mr. Ramsay when he was 18 years old. Mr. Ramsey, a gang member who was ordered to kill the leader of a rival gang, climbed to the second floor of a building and fired into a crowd of people at a Labor Day block party, grazing the intended victim and killing two innocent bystanders, one of whom was pregnant. In imposing sentence, the Court noted that "Ramsay's youth at the time of the offense counsels against a life sentence." Ramsay, 538 F.Supp at 425.

In United States v. Andrew Done, 22-cr-192 (JSR), the Court imposed a 35-year sentence — a substantial variance below a Guidelines range of life imprisonment — following the defendant's guilty plea to racketeering conspiracy

The Honorable Jed S. Rakoff                                    April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)


and his admission to the intentional murder of a rival drug dealer.  Mr. Done was the founder and highest-ranking member of the Shooting Boys, a notorious and violent street gang.  According to the Government, he shot the victim, who was sitting in his car with no means of escape, multiple times because the victim had said something that angered him. See Government Sent'g Ltr., ECF No. 134. Beyond the murder, the government described Mr. Done as having operated a large-scale narcotics enterprise throughout the University Heights section of the Bronx, organizing robberies of rival dealers, controlling distribution within the gang's territory, directing proceeds toward the purchase of firearms, and flooding the community with dangerous drugs. Id. At sentencing, the Court commented, "You have seen both in this case and in many other cases, the tragedies to all concerned that arise from terrible upbringings, from the influence of gangs, and the entire complex of actors that bring people who might have led decent lives to become people who prey on others. Those are not irrelevant, but it's a question of degree. I also think it's relevant that young people don't have the same impulse control as older people, that people with a low IQ don't have the same control as more intelligent people.  And all of those factors weighed to a limited extent - they convince the Court that the Court should not totally write off this defendant by giving him a life sentence. Because he is not without hope of redemption."  See Sent'g Tr. at 17, ECF No. 147.

In United States v. Seymore, No. 22-cr-343 (JMF) (S.D.N.Y.), the defendant received a 240-month sentence — well below the applicable Guidelines range of 360 to 420 months — after pleading guilty to racketeering conspiracy for his role in the intentional murder of a rival gang member, whom he shot in the head.  At the time of the offense, Mr. Seymore was 17 years old.  He was member of and known as a "shooter" for a violent street gang known as "WashSide" or "Wash" with which he participated in numerous violent acts.  In imposing sentence, Judge Furman weighed the gravity of the offense and Mr. Seymore's violent history against his

The Honorable Jed S. Rakoff                                          April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)

youth and the absence of meaningful parental guidance, observing that at seventeen, "he really wasn't a man. He was a child." <u>See</u> Sent'g Tr. at 28, ECF No. 326.

In <u>United States v. Derrick Richardson</u>, 20-cr-299 (VM), the defendant was sentenced to 295 months in prison after pleading guilty to distributing and possessing with intent to distribute cocaine base and heroin as well as conspiring to do the same.  As part of the plea agreement, Mr. Richardson admitted to intentionally shooting and killing a rival gang member.  When he committed the offense, Mr. Richardson was in his late 20's and had nine prior convictions.  He was a member of the Rollin' 30s Crips gang and described by the Government as a "prolific street-level dealer who distributed both crack cocaine and powder cocaine throughout 2014 to 2027." <u>See</u> Govt. Sent'g. Ltr., ECF No. 41.

In <u>United States v. Mayovanex Rodriguez</u>, 22-cr-293 (JPO), the defendant was sentenced to 300 months in prison — significantly below a Guidelines range of 360 months to life — after pleading guilty to racketeering conspiracy, murder by the use of a firearm, and narcotics conspiracy.  At the time of the offense, Mr. Rodriguez was 27 years old, had seven prior felony convictions including crimes of violence, and was on parole.  He was a member of the Trinitarios street gang and, during a robbery of a drug dealer, shot the victim in the head at point-blank range.  <u>See</u> Govt. Sent'g Ltr, ECF No. 444.  At sentencing, Judge Oetken rejected the Government's request for a sentence of 40 years, stating, "I don't believe that a sentence of 40 years is necessary . . .  I think there is always a reason to believe that someone can be better and can change their life.  And I think overall it's better if someone is released at a time when he is able to still have a life and still have family and still hopefully get a job." <u>See</u> Sent'g Tr. at 19, ECF No. 489.

The cases discussed above demonstrate that courts in this District have regularly imposed meaningful variances below the Guidelines — even in cases involving intentional murder, leadership roles in violent criminal enterprises, and

The Honorable Jed S. Rakoff                                          April 28, 2026
United States v. Faisil McCants
25 CR 417 (JSR)


extensive criminal histories — where mitigating factors counsel against a sentence within or above the applicable range. Mr. McCants is similarly situated in some respects but, in critical respects, less culpable.  The death that resulted from Mr. McCants' conduct was not intentional and distinguishes him from these other defendants.  When that important distinction is considered alongside the other mitigating aspects of Mr. McCants' background, history, and personal characteristics, a sentence of no greater than 30 years – the sentence Probation recommends – is not only warranted, but just.


## CONCLUSION

For the reasons set forth herein, a sentence of 360 months and a term of supervised release is more than sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.

Respectfully submitted,

*/s/ Amy Gallicchio*

_____
Amy Gallicchio, Esq.
Michael Arthus, Esq.
Assistant Federal Defender
Federal Defenders of New York
Office:  212-417-8728
Cell:  917-612-3274