

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 28, 2026

**By ECF**
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *United States v. Faisil McCants*, 25 Cr. 417 (JSR)

Dear Judge Rakoff:

The Government respectfully writes in advance of the sentencing of defendant Faisil McCants in the above-captioned case, which is scheduled for May 5, 2026. For the reasons set forth below, the Government submits that a significant sentence of 45 years' imprisonment is warranted—and not greater than necessary—to serve the purposes of sentencing in this case.

## I.    Background

### A.  Offense Conduct

The defendant stands convicted of possessing a machinegun, from which he fired 15 rounds on a public street in the middle of the day, striking and killing a wholly innocent bystander standing on the sidewalk with her walker. (Presentence Investigation Report ("PSR") ¶¶ 8–16).

On August 27, 2025, shortly before 12:30 in the afternoon, a marijuana dealer ("Individual-1") was sleeping on a lawn chair in front of a deli near the corner of East 109th Street and Madison Avenue in East Harlem, New York. (*Id.* ¶ 10). The defendant—wearing dark sweatpants, a dark hooded sweatshirt with the hood pulled up, and a face mask—walked by Individual-1 with co-conspirators Nasir Parsons and Jadhian Cordero, who were also wearing sweatpants, dark hooded sweatshirts with the hoods pulled up, and face masks. (*Id.* ¶¶ 10–11). After walking by Individual-1, the defendant, Parsons, and Cordero walked around the corner where they had a brief conversation amongst themselves. (*Id.* ¶ 11). The defendant reached into his sweatshirt pocket and gripped an item inside his pocket—subsequently revealed to be a machinegun (the "Machinegun")—before the defendant, followed by Parsons and Cordero, walked back to the front of the deli. (*Id.* ¶ 11).

Once in front of the deli, the defendant woke up Individual-1; specifically, the defendant bent down toward Individual-1 while still holding the Machinegun inside his pocket. (*Id.* ¶ 12). The defendant asked Individual-1 if he had any marijuana for sale before demanding that Individual-1 hand over his backpack, which contained marijuana. (*Id.*). The defendant, Parsons,

1

and Cordero then engaged in a physical altercation with Individual-1, during which the defendant brandished the Machinegun while fighting with Individual-1 in the middle of the street. (*Id.* ¶ 13). The defendant, Parsons, and Cordero grabbed two backpacks containing marijuana from Individual-1 and fled, while Individual-1 followed them in pursuit. (*Id.*).

The defendant then pulled out the Machinegun from his sweatshirt pocket and, standing on the sidewalk, fired 15 rounds in the general direction of Individual-1. (*Id.* ¶ 14).

Law enforcement recovered approximately 15 shell casings from the area of the shooting. (*Id.* ¶ 15). Although the firearm was not recovered, an analysis by the Bureau of Alcohol, Tobacco, Firearms and Explosives concluded that the firearm used by the defendant was a machinegun based on the number of rounds discharged in quick succession, the consistent interval in which the rounds were discharged, and the sustained nature of the muzzle flash, indicating a single trigger pull. (*Id.* ¶ 16).

At the time that the defendant fired the Machinegun, a 69-year-old woman ("Victim-1") was standing with a walker on the sidewalk, near the corner of East 110th Street and Madison Avenue. (*Id.* ¶ 14). She was struck by a bullet fired by the defendant and fell to the ground. (*Id.*). Victim-1 was transported to the hospital, where she was pronounced dead. (*Id.*). Doctors determined that the bullet—which entered Victim-1's body through her left shoulder and traveled to her lung—caused Victim-1 to go into cardiac arrest. (*Id.*).

## II.    Procedural History

On September 16, 2025, the defendant was charged by Superseding Indictment with Hobbs Act robbery, in violation of Title 18, United States Code, Sections 1951, and use, carrying, and possession of a machinegun, which was brandished and discharged, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii) and (B)(ii).

On November 25, 2025, the defendant pleaded guilty to use, carrying, and possession of a machinegun, pursuant to a Plea Agreement. In the Plea Agreement, the parties set forth a stipulated Guidelines sentence ("the Stipulated Guidelines Sentence") of 360 months' imprisonment, which is the statutory mandatory minimum term of imprisonment. The Probation Offices concurs with the parties' Guidelines calculation. (PSR ¶¶ 69–70).

## III.    Discussion

### A. Applicable Law

Since *United States v. Booker,* the Guidelines are advisory, providing sentencing courts with a recommendation. 543 U.S. 220 (2005). *Booker* held that although the Guidelines are not mandatory, courts must "consult" them during sentencing. *Id.* at 264. The Guidelines provide "the starting point and initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Thereafter, a sentencing judge must consider the seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) relevant policy statements by the Sentencing

Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. §§ 3553(a)(1)-(7); *Gall*, 552 U.S. at 50 & n.6.

The statute directs judges to impose sentences sufficient to "comply with the purposes of sentencing." This analysis requires the consideration of the following sentencing goals:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

A sentencing court may consider "any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563-64 (1984); *accord Pepper v. United States*, 562 U.S. 476, 488 (2011). "Highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*¸ 337 U.S. 241, 247 (1949). Sentencing judges regularly consider a defendant's risk of recidivism and failure to be deterred by previous sentences. *See, e.g., United States v. Moore*¸ 17 Cr. 7 (JGK), 2022 WL 934061, at *2 (S.D.N.Y. Mar. 29, 2022).

### B.  A Sentence of 45 Years' Imprisonment is Warranted

In the circumstances of this case, a sentence of 45 years' imprisonment is appropriate punishment, and no greater than necessary, for the defendant's heinous criminal conduct. This sentence is amply warranted to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to provide adequate specific and general deterrence.

*First*, as to the nature and circumstances of the offense, the defendant stands convicted of possessing a machinegun, which was brandished and discharged. Had the defendant's criminal conduct been limited to possessing an automatic weapon in New York City, that alone would have been serious criminal conduct posing a substantial danger to the community and warranting a significant sanction. Here, however, the defendant chose to use that deadly weapon in furtherance of the midday robbery of a marijuana dealer on a public street. The defendant's willingness to use the machinegun to accomplish this robbery is abundantly clear: the defendant began gripping the machinegun in his sweatshirt pocket before he even approached the marijuana dealer and brandished it shortly thereafter during the physical altercation with dealer that ensued. The defendant's subsequent decision—to fire 15 rounds with an automatic weapon on a populated New York City street in the middle of the day, aiming in the direction of the marijuana dealer—

3

demonstrates a stunning level of violence and an abject lack of concern for the safety of the community.  And the defendant's deliberate decision to engage in this wanton and senseless violence had predictable and entirely foreseeable deadly consequences: although he missed the dealer, the defendant hit and killed a 69-year-old woman standing on the sidewalk with her walker. The defendant's criminal conduct—which could easily have claimed the lives of multiple additional victims—cost the life of a wholly innocent bystander.  This egregious and deadly criminal conduct demands a commensurately serious sanction.

*Second*, as to the history and characteristics of the defendant, the defendant—despite his young age—has an extremely troubling history of violent criminal conduct, including repeated shootings.  In October 2024, less than a year before the instant offense, the defendant was convicted of attempted murder in New York County Supreme Court.  He was adjudicated as a youthful offender and sentenced to one to four years' imprisonment.  This conviction arose from the defendant's participation in a shooting on May 29, 2023, in which the defendant and his co-conspirators shot at other individuals, who fled the scene.[1]  The defendant was released on parole following his incarceration for this shooting on June 10, 2025—that is, less than three months before the defendant discharged a machinegun on a public street in the instant case, resulting in the senseless death of a bystander.  That the defendant chose to engage in a deadly shooting mere months after his release from imprisonment on another shooting, and after having already been convicted of attempted murder, demonstrates a striking need to protect the public from further violent crimes by the defendant.  Moreover, the fact that the defendant committed a machinegun shooting in broad daylight while still on parole evidences a stunning lack of respect for the law.

*Third*, the circumstances here—including that the defendant committed such a senseless crime while on parole and very shortly after having been convicted of another incredibly serious crime—counsel in favor of a sentence above the 30-year mandatory minimum.  Any person convicted of possessing a machinegun under 18 U.S.C. § 924(c) is subject to a mandatory minimum term of 30 years' imprisonment—even if that machinegun were neither brandished nor discharged.  Accordingly, that statutory requirement fails to take into account the substantial aggravating factors in this case—that the defendant brandished the machinegun in a physical altercation during the midday robbery of a drug dealer, that the defendant discharged 15 rounds from the machinegun on a public street, and, most significantly, that the defendant used the machinegun to shoot and kill an innocent bystander.  *See United States v. Ben-Jochannan*, No. 24-1573-CR, 2025 WL 2985745, at *2 (2d Cir. Oct. 23, 2025) (determining that a sentence twice as long as the Guidelines was substantively reasonable for 924(c) conviction where the offense involved murder; noting that the 924(c) Guidelines "simply recommend imposing the mandatory minimum term of imprisonment" under which "[a]ggravating and mitigating factors are not considered" such that "[t]here is . . . no difference between the recommended sentence for a defendant convicted of discharging a firearm by firing the weapon into the air, causing no injury,

---

[1] The Government understands that, contrary to the information set forth in the PSR (*see* PSR ¶ 30), no one was shot during this incident.  However, the Government understands that a victim was shot in the stomach during a separate shooting in which the defendant also participated—and for which the defendant was also arrested—on May 28, 2023, the day before the above-described shooting on May 29, 2023.  The Government understands that the Probation Office intends to amend the portion of the PSR related to the defendant's criminal history, including to revise the narrative information about the defendant's prior conviction.

and the recommended sentence for a defendant . . . who discharged a firearm directly at a victim with the intent to kill him"). A sentence significantly above the mandatory minimum in this case will adequately promote respect for the law and afford much-needed deterrence to lawless and deadly gun violence. New Yorkers must feel free to walk down the street at lunchtime without fear that they will be gunned down by a machinegun's bullet. And individuals who unlawfully possess machineguns must understand that, if they choose to discharge them and risk the safety of the community, they are exposing themselves to severe criminal consequences well beyond the minimum sentence required by the statute. In other words, a person who chooses to discharge a machinegun—and certainly a person who kills a bystander in doing so—must expect that he will be subject to a significantly lengthier sentence than a person who engages in the serious but still far less culpable conduct of merely possessing the gun.

Ultimately, the defendant's criminal actions in this case resulted in the most serious imaginable consequence: an innocent person lost her life. Victim-1 did nothing more than walk on a public street in the middle of the day. And because of this defendant's inability or unwillingness to follow the law and to respect the lives of others, a family is devastated. The Government acknowledges that the defendant, as recounted in detail in his sentencing submission, has had real challenges in his life, including during his childhood. And the Government recognizes that the defendant is still a young man. The Court certainly should contemplate those considerations as it weighs all of the sentencing factors under 18 U.S.C. § 3553(a). But the defendant's violent actions in this case are absolutely intolerable, and the sentence imposed by the Court must clearly communicate the same. In light of the grave consequences of this defendant's violent acts, in light of his significant and violent criminal history, and in light of the fact that he committed this offense while under parole supervision, a sentence well above the statutorily required minimum is warranted in this case.

## IV.    Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence of 45 years' imprisonment is sufficient but not greater than necessary.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    _____/s/_____
Brandon D. Harper/Alexandra S.
Messiter/Kathryn Wheelock
Assistant United States Attorneys
(212) 637-2209