

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 1, 2026

**By ECF**
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *United States v. Faisil McCants*, 25 Cr. 417 (JSR)

Dear Judge Rakoff:

The Government respectfully writes in advance of the sentencing of defendant Faisil McCants in the above-captioned case, in response to the submission by the defendant dated April 28, 2026.  (Defense Submission ("Def. Sub.") Dkt. 34).  The Government particularly writes to highlight that (1) McCants' history—including his conduct while incarcerated—shows that his decision to engage in the instant criminal conduct was not a mere "moment of reckless impulse" (Dkt. 34 at 1); and (2) the cases cited by the defense do not alter the appropriateness of a 45-year sentence in the circumstances of this particular case.  The Government also appends to this submission multiple victim impact statements written by members of the victim's grieving family—which powerfully illustrate the immeasurable cost of the defendant's crime.[1]  For the reasons set forth below and in the Government's April 28, 2026 submission, a sentence of 45 years' imprisonment is warranted to serve the purposes of sentencing in this case.

## I.    McCants' History Supports a 45-Year Sentence in this Case

The defense asserts in its submission that the defendant's criminal conduct in this case was an "impulsive" "failure of judgment."  (Def. Sub. at 1; *see id.* (characterizing the defendant's actions as "a moment of reckless impulse").  But the defendant's history makes plain that his decision to engage in an armed robbery with a machinegun, clad in dark clothing, a hood, and a face mask on an August day—and then to fire 15 rounds from that machinegun on a public street— was far from a one-off, momentary lapse in judgment.  As noted in the Government's submission, at the time he engaged in the instant offense, the defendant had been released less than three months earlier, and was still on parole, from having shot four times at another person.  (PSR ¶ 30).  And the revised Presentence Investigation Report in this case reflects a startlingly lengthy string of arrests—especially in light of the defendant's young age—at least three of which involved additional shootings, in two of which victims were hit, one in the arm and one in the stomach.[2]

---

[1] The Government understands that at least one additional family member of the defendant wishes to make an oral statement at sentencing.

[2] As one measure of the staggering level of violence across these cases, ballistics evidence from the scenes indicates that a total of at least approximately 30 bullets were fired during these incidents (*see* PSR ¶¶ 36–38), not including the 15 bullets fired during the instant offense (*id.* ¶ 15).

(*Id.* ¶¶ 36, 37, 38).  Yet having been arrested in connection with four separate shootings in 2023 alone—one of which resulted in an attempted murder conviction and incarceration—failed to deter the defendant from obtaining a machinegun shortly after his release, brandishing it during a drug robbery on a public street, and then using it to fire 15 rounds on a populated sidewalk.  In other words, mere months after the defendant was again at liberty, he once again engaged in a shooting—this time with a machinegun and with deadly results.  These facts speak to a profound need to protect the public and deter the defendant from engaging in dangerous criminal activity.

The defense, in its submission and appended mitigation report, also argues that the defendant "is committed to getting much needed help" and "has demonstrated an aptitude for success and growth in custody." (Def. Sub. at 2; Mitigation Report ("Mitig. Rep.") at 14, Dkt. 34-1).  But McCants' conduct while incarcerated suggests otherwise.  As the defense acknowledges, while serving the attempted murder sentence on his prior shooting conviction, the defendant was charged with assaulting a staff member.  (Mitig. Rep. at 13).  And while the defendant had the opportunity on parole to participate in both an anger management program and outpatient substance use treatment, the defendant chose to engage in the instant offense before either of those programs had even begun.  (PSR ¶¶ 30, 63).  More recently, while detained at the Metropolitan Detention Center ("MDC") on the current offense, the defendant obtained a disciplinary infraction for requesting permission to make a social call and then attempting to tamper with the phone cable—by moving the cable from the social line to the legal line—in order to prevent the phone call from being properly monitored.

Moreover, while at the MDC, the defendant posed for photographs in his jail cell (two of which are copied below), which were then posted on his social media account.  In these photographs, the defendant is flashing the hand sign of the Sex Money Murder gang.  The social media post is captioned with, among other things, a red blood drop emoji, commonly used by members of Blood sets such as Sex Money Murder to denote their Bloods membership, and the hashtag "FuxkDaFeds," with an "x" substituted for the "c" as is commonly done by Bloods members to try to avoid using a letter representing the Crips.



2



These images of the defendant flashing gang signs on social media, while already detained at the MDC in connection with the charges in this case, stand in stark contrast to the defense portrayal of a person who is committed to positive change.

The Government is cognizant of the significant challenges that the defendant suffered during his upbringing, including, as the defense points out, growing up in an area marked by significant gang activity and violence. (*See* Mitig. Rep. at 11). But the defendant's own repeated and persistent criminal conduct is now part of these very same public safety problems and protecting the community from further crimes by the defendant is of paramount importance.

## II.    The Cases Cited by the Defense Do Not Alter the <u>Appropriateness of a 45-year Sentence</u>

In its submission, the defense cites a handful of other cases in this District involving either sentences or sentencing reductions in cases involving murder. None of those cases, however, alter the appropriate of a 45-year sentence as to this defendant in the circumstances of this particular case. In *Ramsay*, in finding extraordinary and compelling reasons justifying a sentence reduction, this Court found that the defendant, who had already "spent decades behind bars," "offer[ed] compelling evidence of rehabilitation." *United States v. Ramsay*, 538 F. Supp. 3d 407, 425 (S.D.N.Y. 2021) (observing that the defendant "has not merely become a model inmate; he has become an exemplary family member, friend, student, and employee" and that "[h]e offers emotional support to his family and friends, excels in his employment, takes advantage of opportunities to learn new skills, and donates to charity"). Thus, this Court's decision in *Ramsay*, in terms of both the procedural posture and the defendant's demonstrated rehabilitation during his many years of imprisonment, is readily distinguishable from the matter at hand. None of the other four cases cited by the defense involved the possession or discharge of a machinegun, which poses substantially heightened risks to the community, or the death of an innocent bystander. *See United*

*States v. Mayovanex Rodriguez*, 22-cr-293 (JPO); *United States v. Andrew Done*, 22-cr-192 (JSR); *United States v. Seymore*, No. 22-cr-343 (JMF); *United States v. Derrick Richardson*, 20-cr-299 (VM).

Finally, the suggestion that the defendant is less culpable because he fired a machinegun "in the direction of the robbery target" who was "approximately half a block away" but nonetheless "did not intend to take anyone's life" (Def. Sub. at 6) deserves little, if any, weight. (*See also* Def. Sub. at 9 (arguing that "unlike here" the other cited cases involved murders that were "intentional and premeditated")). It is entirely foreseeable that shooting 15 rounds from a machinegun at a person may kill them—it is also entirely foreseeable that doing so on a populated New York City sidewalk may kill another person or even multiple people. The defendant chose to engage in these criminal acts despite the readily apparent potential consequences, and the sentence imposed must reflect that intentional conduct.

III.    **Conclusion**

For the reasons set forth above, the Government respectfully submits that a sentence of 45 years' imprisonment is sufficient but not greater than necessary.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____/s/_____
Brandon D. Harper/Alexandra S.
Messiter/Kathryn Wheelock
Assistant United States Attorneys
(212) 637-2209

4