

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 5, 2026

**By ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *United States v. Jadhian Cordero*, S2 25 Cr. 417 (JSR)

Dear Judge Rakoff:

The Government respectfully writes in advance of the sentencing of defendant Jadhian Cordero in the above-captioned case, in response to the submission by the defendant dated April 30, 2026. (Defense Submission ("Def. Sub.") Dkt. 37). The Government particularly writes to highlight that Cordero's history does not alter the appropriateness of a 120-month sentence in this case. As described in the Government's initial submission ("Gov. Sub.") Dkt. 38), the nature and circumstances of the offense are severe. Cordero chose to participate in a gunpoint robbery that led directly to the shooting and killing of an utterly innocent woman down the block. Cordero's decision to participate in an armed robbery on a busy Manhattan block in the middle of the day demands a serious sanction. The seriousness of the offense conduct—coupled with Cordero's 2022 arrest with a loaded, stolen firearm and his presence with co-defendant McCants[1] during a 2023 shooting, both in the same East Harlem neighborhood—warrant a 120-month sentence.

None of the factors raised by the defense justify the mandatory minimum sentence that the defense seeks, given the severity of Cordero's conduct and criminal history. To be sure, the Government is cognizant of the challenges that the defendant suffered during his upbringing. (*See* Def. Sub. at 2-4). But, as this Court recognized in sentencing co-defendant Faisil McCants, nothing about a defendant's difficult upbringing makes their engagement in criminal conduct inevitable. Moreover, the defense particularly highlights public safety issues in the neighborhood surrounding the housing development where Cordero lived with his mother before his arrest. (*Id.* at 3-4). However, Cordero's own criminal conduct—and specifically, his decision to engage in gun violence—now contributes to these very same public safety problems and protecting the community from further crimes by Cordero is of paramount importance.[2] The defense also points

---

[1] The Government's initial submission stated that McCants was arrested for this 2023 shooting. (*See* Gov. Sub. at 4). That is incorrect. While an NYPD investigation identified McCants as the shooter, McCants was not arrested.

[2] The defense selectively cites two cases for the proposition that a defendant's childhood conditions, including growing up in a dangerous neighborhood, warrant mitigation. *See id.* at 4. In *United States v. Sawyer*, the Second Circuit explained that the defendant's upbringing *coupled with* a low danger to the community warranted a new sentence lower than the "shockingly high" sentence imposed by the

to Cordero's caregiving responsibilities towards his mother and younger brother as a basis for imposing the mandatory minimum sentence of seven years' imprisonment. (*See* Def. Sub at 4-5). However, the defendant's separation from his family is an unavoidable consequence of the defendant's criminal conduct and this separation will be substantial whether he is sentenced to the mandatory minimum required by statute or the greater sentence the Government seeks. Accordingly, this factor should be given little weight in the circumstances of this case.

Further, in seeking the mandatory minimum sentence, the defendant cites the conditions at MDC. The Government has not previously been made aware of any issues at MDC that Cordero, in particular, has faced. Tellingly, the defense's only complaint specific to Cordero is that he is on a waitlist for a drug treatment program. It is also notable that the defense's submission cites cases from two years ago—prior to the start of the defendant's detention in this case—to purport to describe the current conditions at MDC. (*See* Def. Sub. at 7-8). While the submission cites "basic inhumane conditions" (*id.* at 8), courts in this District have repeatedly observed that the conditions at the MDC have recently improved significantly since 2024. *See, e.g.*, *United States v. McCullum*, 24 Cr. 667 (JPC) (S.D.N.Y. Aug. 29, 2025), Dkt. 35 at 55–56 (noting, for defendant who was arrested in November 2024, "the conditions at the jail have improved considerably, with increased staffing levels," and "while lockdowns are inevitable at a jail, the number of times when inmates are experiencing extended lockdowns is rare" (citing Judge Caproni's similar recognition during a bail hearing in *United States v. Alexander*, 24 Cr. 676 (VEC))); *see also United States v. Reshard*, 24 Cr. 392 (JMF) (S.D.N.Y. May 14, 2025), Dkt. 38 (noting that the MDC is "a lot better than it was in January of last year [2024]"). In short, the defendant's unsupported and outdated arguments regarding the conditions at the MDC do not justify the mandatory minimum sentence.

Finally, the Government recognizes the defendant's age, which the Government was cognizant of in crafting its sentencing recommendation in this case. However, as this Court recognized in the sentencing of McCants, this factor does not inherently justify a sentence no higher than the mandatory minimum. Moreover, as noted in the Government's April 30, 2026 submission, the mandatory minimum is particularly insufficient in this case insofar as it fails to account, in any way, for the firearm here having been discharged 15 times on a public street and having resulted in the death of an innocent bystander.

---

district court. 907 F.3d 121, 123 (2d Cir. 2018). This is inapplicable here, where the defendant's history and characteristics demonstrate that he is a danger to his community already plagued by violence.

For the reasons set forth above, the Government respectfully submits that a sentence of 120 months' imprisonment is sufficient but not greater than necessary.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:           /s/
          Brandon D. Harper/Alexandra S.
          Messiter/Kathryn Wheelock
          Assistant United States Attorneys
          (212) 637-2209